UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**For Online Publication Only**

-----------------------------------------------------------------------X
HESKELL KHOZOURI-ZADEH,

                     Plaintiff,

**MEMORANDUM & ORDER**
21-cv-4601 (JMA) (AYS)

-against-

**FILED**
**CLERK**

COUNTY OF NASSAU et al.,

1/30/2025 9:25 am

                     Defendants.

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Presently before the Court is the motion by Defendants County of Nassau ("Nassau County"), Nassau County Police Department, and Nassau County Police Emergency Ambulance Bureau for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 33.) Plaintiff's claims stem from a July 25, 2020 altercation with another individual that resulted in both individuals being arrested by officers of the Nassau County Police Department. Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging claims for false arrest, malicious prosecution, violation of right to counsel, deliberate indifference, and conspiracy. (ECF No. 1.)

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and this action is DISMISSED.

### I.    BACKGROUND[1]

**A.    Factual Background**

On the evening of July 25, 2020, Plaintiff was visiting the home of Isadora Miale in Syosset, New York. (Compl. ¶¶ 29-31.) Plaintiff's daughter was friends with Miale's daughter,

---

[1] The facts set forth in this Opinion are drawn from Plaintiff's Complaint, (ECF No. 1 ("Compl.")), and the parties' submissions in connection with Defendants' motion for summary judgment. The Court draws from Defendants' Local Civil Rule 56.1 Statement of Material Undisputed Facts (ECF No. 33-2 ("Defs.' 56.1")), Plaintiff's Deposition Transcript (ECF No. 33-27 ("Pl. Dep. Tr.")), Police Officer Manuel Dias's Deposition Transcript (ECF No. 33-28

and Plaintiff was invited to take a tour of the house along with his wife and daughter. (Id. ¶ 32.) Isadora Miale lives at the home with her husband, Frank Miale, and their children. (Id. ¶ 31.) Shortly after 9:00 p.m., Frank Miale arrived at the house, and an altercation ensued between Plaintiff and Mr. Miale. (Id. ¶¶ 34-37; Pl. Dep. Tr. 18-20.) Prior to the altercation, Plaintiff observed Mr. Miale opening the driver's side door of Plaintiff's car, which had been parked in Mr. Miale's driveway. (Defs.' 56.1 ¶ 6.) Mr. Miale began to drive the car out of the driveway, and Plaintiff pulled himself onto the side of the car while telling Mr. Miale to stop the vehicle. (Pl.'s Dep. Tr. 18-19.) During this incident, Plaintiff was thrown to the ground to the side of the moving vehicle. (Id.)

When Plaintiff stood up, he felt a burning pain in his right leg and observed Mr. Miale walking towards him. (Defs.' 56.1 ¶¶ 7-9.) At this point, Plaintiff and Mr. Miale engaged in a fist fight in the street in front of the Miales' home, with both individuals punching each other. (Id. ¶¶ 9-10; B. May Dep.) According to Plaintiff, he was trying to defend himself after seeing Mr. Miale walk towards him aggressively while swinging his fists. (Pl.'s Dep. Tr. 21.) An eyewitness reported that he saw both individuals engaged in a physical altercation while punching each other. (B. May Dep.) During the physical altercation, Plaintiff again fell to the ground on his injured right leg. (Defs.' 56.1 ¶ 10.) Bystanders called 911, and officers from the Nassau County Police Department arrived at the scene at approximately 9:43 p.m. (Compl. ¶¶ 41-43.)

Nassau County police officers arrived and observed a chaotic scene in the aftermath of the altercation between Plaintiff and Mr. Miale, with both individuals screaming. (Defs.' 56.1 ¶ 12;

---

("Dias Dep. Tr.")), EMT Goodwin's Deposition Transcript (ECF No. 33-26 ("Goodwin Dep. Tr.")), and the Supporting Deposition of Brian May (ECF No. 33-13 ("B. May Dep.")). Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. For ease of reference, the Court refers to Defendants' brief in support of their motion for summary judgment as "Defs.' Br." (ECF No. 33-3), to Plaintiff's opposition brief as "Pl.'s Opp." (ECF No. 33-22), and to Defendants' reply brief as "Defs.' Reply Br." (ECF No. 33-33.)

2

Dias Dep. Tr. 53.) Upon arriving at the location, Nassau County Police Officer Manuel Dias ("Officer Dias") secured the scene by separating both individuals and requesting emergency medical services ("EMS"). (Defs.' 56.1 ¶ 13; Dias Dep. Tr. 55.) While waiting for EMS, Officer Dias rendered aid to both individuals by speaking to them, evaluating their injuries, and checking for blood loss. (Defs.' 56.1 ¶ 14; Dias Dep. Tr. 62.) Officer Dias observed that both individuals were conscious, alert, and breathing at this time. (Dias Dep. Tr. 62.) At approximately 9:49 p.m., EMS arrived at the scene, and EMT Jeffrey Goodwin ("EMT Goodwin") began attending to Plaintiff. (Goodwin Dep. Tr. 37-38; Nassau Cty. Patient Care Report, ECF No. 33-25 at 2.) EMT Goodwin observed that Plaintiff was laying on the ground when he first arrived. (Goodwin Dep. Tr. 38.) EMT Goodwin and officers on the scene assisted Plaintiff by placing him on a stretcher and putting him in the ambulance (Id. at 39-40.) Plaintiff alleges that while he was being helped onto the stretcher, he was "screaming and yelling" in pain. (Pl. Dep. Tr. 23-24.)

During EMT Goodwin's interaction with Plaintiff in the ambulance, EMT Goodwin observed that Plaintiff was stable, breathing, talking, and able to hold a conversation with a normal demeanor. (Goodwin Dep. Tr. 40, 48-49.) EMT Goodwin noted that throughout the entire time they were together, Plaintiff remained conscious and alert with stable vital signs. (Id. at 62.) EMT Goodwin observed that Plaintiff was in pain, and Plaintiff informed EMT Goodwin that he had injured his right leg in a physical altercation with Mr. Miale. (Id. at 38-40.) EMT Goodwin attempted to give Plaintiff an IV with morphine for the pain, but the IV could not be successfully inserted. (Nassau Cty. Patient Care Report at 2; Goodwin Dep. Tr. 65, 84.)

After Plaintiff was loaded onto the ambulance, the ambulance remained at the scene for approximately one hour and fifty minutes before departing for Nassau University Medical Center at approximately 11:40 p.m. (Nassau Cty. Patient Care Report at 2; Dias Dep. Tr. 99.) Plaintiff alleges that, during this time, the Nassau County police officers asked him what happened and

3

pressured him not to press charges against Mr. Miale. (Pl. Dep. Tr. 26-28.) According to Plaintiff, he informed the officers that he wanted to press charges, and the officers repeatedly asked Plaintiff if he wanted to drop the charges against Mr. Miale. (Id. at 26-27.) Plaintiff alleges that the officers informed him that he would be arrested if he did not drop the charges because Mr. Miale also wanted to press charges against him. (Id. at 27.) Plaintiff alleges that he told the officers that he had a broken leg and needed to go to the hospital and repeatedly confirmed that he wanted to press charges against Mr. Miale. (Id.) According to Plaintiff, the ambulance only left to go to the hospital after his wife called an attorney, who then called the police station and asked why Plaintiff was not being transported to the hospital. (Compl. ¶ 60; Pl. Dep. Tr. 34-35.) Plaintiff alleges that a police supervisor then arrived at the scene, and Plaintiff was transported to the hospital shortly thereafter. (Pl. Dep. Tr. 35.)

As noted earlier, Plaintiff testified at his deposition that while he was being helped onto the stretcher he was "screaming and yelling" in pain. (Pl. Dep. 23–24.) Additionally, Plaintiff told EMT Goodwin and the officers that he had injured his leg and needed to go to the hospital. (Id. at 27.) There is, however, no other evidence concerning what, if anything, Plaintiff told EMT Goodwin or officers about the pain he was experiencing while Plaintiff was waiting in the ambulance.

According to EMT Goodwin, he believed the officers were conducting their investigation into the incident during the time in which the ambulance remained on the scene. (Defs.' 56.1 ¶ 17; Goodwin Dep. Tr. 43.) This investigation included taking statements from Plaintiff, Mr. Miale, and an eyewitness who observed the physical altercation. (Defs.' 56.1 ¶ 17.) The eyewitness informed officers in a sworn supporting deposition that he observed both Plaintiff and Mr. Miale punching each other. (B. May Dep.) After determining that probable cause existed to make arrests, the officers arrested both Plaintiff and Mr. Miale for Assault in the third degree. (Defs.' 56.1 ¶ 19.)

4

Officer Dias stated that while conducting the investigation, the officers asked Plaintiff if he wanted to press charges and never attempted to discourage him from pressing charges. (Dias Dep. Tr. 93, 106.)

At his deposition, Officer Dias testified that, according to Nassau County Police Department policy, two officers must accompany an arrestee who is being transported to the hospital. (Id. at 67.) According to Officer Dias, this may have been a reason for the one hour and fifty-minute delay before the ambulance left to go to the hospital. (Id. at 108, 118-20.)

At approximately 12:00 a.m., Plaintiff arrived at the hospital, where he received x-ray scans and was diagnosed and treated for a right tibial pilon fracture and right fibula fracture. (Compl. ¶ 37; Pl. Dep. Tr. 42.) At the hospital, Plaintiff was given fentanyl for his pain and subsequently underwent multiple surgeries to treat and stabilize the fractures in his right leg. (Pl.'s Opp. 11; Nassau Medical Record, ECF Nos. 33-23, 33-24 at 6, 204.) Nassau County police officers accompanied Plaintiff to the hospital, where they took a sworn witness statement from him based on his account of the altercation with Mr. Miale. (Pl. Dep. Tr. 37-38; Dias Dep. Tr. 84-86.) The assault charge against Plaintiff was eventually dismissed on March 21, 2022. (Pl.'s Cert. of Disposition, ECF No. 33-31.)

On August 26, 2021, Plaintiff commenced this civil rights action by filing the Complaint against the Defendants. (ECF No. 1.) In the Complaint, Plaintiff asserts causes of action under 42 U.S.C. § 1983 ("Section 1983") for false arrest, malicious prosecution, violation of right to counsel, deliberate indifference, and conspiracy. (See ECF No. 1.) Plaintiff brought his claims against Nassau County as a municipal corporation and against Nassau County Police Department and Nassau County Police Emergency Ambulance Bureau as public benefits corporations. (Id. ¶¶ 14-17.)

Currently pending before the Court is Defendants' fully-briefed motion for summary judgment, which was filed on April 29, 2024. (ECF No. 33.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Choi v. Tower Research Capital LLC, 2 F.4th 10, 16 (2d Cir. 2021); see McKinney v. City of Middletown, 49 F.4th 730, 737 (2d Cir. 2022) ("No genuine dispute of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.") (internal quotation marks omitted). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks omitted). For any burden of proof that rests with the nonmoving party, the movant can "point[ ] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Id. (internal quotation marks and alterations omitted). Once the moving party carries its burden, "the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." McKinney, 49 F.4th at 738 (internal quotation marks omitted). In this analysis, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." ING Bank N.V. v. M/V Temara, 892 F.3d 511, 518 (2d Cir. 2018). Ultimately, "[t]he role of the district court on summary judgment is 'not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" McKinney, 49 F.4th at 738 (quoting Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011)).

6

B.    **Local Rule 56.1**

Plaintiff failed to submit a statement in opposition to Defendants' summary judgment motion pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("56.1 statement"). In moving for summary judgment or answering such a motion pursuant to Rule 56, litigants in this district are required by the Local Rules to provide a statement setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. Local Rule 56.1(a)–(b); see Genova v. County of Nassau, 851 F. App'x 241, 243 (2d Cir. 2021) (noting the requirements under Local Rule 56.1). In both instances, the party must support its position by citing to admissible evidence from the record. Local Rule 56.1(b), (d); see also Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "[Local] Rule 56.1 is strict: 'Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.*'" Genova, 851 F. App'x at 243 (first quoting Local Rule 56.1(c); and then citing T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009)). "In the typical case, failure to respond [to a 56.1 statement] results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." Genova, 851 F. App'x at 243 (alteration in original) (quoting T.Y., 584 F.3d at 418).

Since Plaintiffs did not submit a Rule 56.1 Statement, the Court may deem the facts in Defendant's 56.1 Statement as admitted where supported by the record. See Est. of Keenan v. Hoffman-Rosenfeld, 833 F. App'x 489, 491 (2d Cir. 2020) ("[The] district court did not abuse its discretion in deeming admitted the facts set forth in the [defendants' 56.1 statements] . . . [where the] defendants submitted statements of facts with numbered paragraphs and in response, [the]

7

plaintiffs submitted conclusory statements that did not correspond to [the] defendants' statements."). Still, the Court retains "broad discretion . . . to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Even in exercising this discretion, however, after having "conduct[ed] an assiduous review of the record," id., the Court nonetheless grants Defendants' motion for summary judgment.

**C.     Section 1983**

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see 42 U.S.C. § 1983. "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005); see Moroughan v. Cnty. of Suffolk, 514 F. Supp. 3d 479, 511 (E.D.N.Y. 2021) (similar). Accordingly, "[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and alterations omitted); see Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed.").

A Section 1983 claim against a municipality is governed by Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) and its progeny. "Monell expressly prohibits respondeat superior liability for municipalities . . . meaning that a plaintiff must demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir. 2020) (quoting Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). "The elements of a Monell claim are (1) a municipal policy or

8

custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Id. at 97; see Frost v. New York City Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020).

### III.   DISCUSSION

**A.   The Claims Against the Nassau County Police Department and the Nassau County Police Emergency Ambulance Bureau Must Be Dismissed**

Defendants contend that the Nassau County Police Department and Nassau County Police Emergency Ambulance Bureau must be dismissed as non-suable entities. (See Defs.' Br. at 4-5). Plaintiff failed to respond to those arguments. (See generally, Pl.'s Opp.) Courts may "infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned." Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014). Accordingly, Plaintiff abandoned those claims. See id. at 196-97 (affirming dismissal of claims as abandoned during summary judgment briefing); Malik v. City of N.Y., 841 F. App'x 281, 284 (2d Cir. 2021) (similar).

Even if Plaintiff had not abandoned them, the claims against the Nassau County Police Department and Nassau County Police Emergency Ambulance Bureau must be dismissed. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." Rose v. Cnty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (collecting cases). Indeed, courts in this district have repeatedly held that Nassau County Police Department is not a suable entity. See, e.g., Burris v. Nassau County, No. 11-CV-0119, 2015 WL 8665445, at *3 (E.D.N.Y. 2015) (dismissing claims against NCPD as a non-suable entity); Stewart v. Nassau County, No. 12-CV-0320, 2014 WL 204615, at *3 (E.D.N.Y. 2014) (same). Accordingly, the claims against Nassau County Police Department and Nassau County Police Emergency Ambulance Bureau are dismissed.

**B.      Plaintiff Abandoned the False Arrest, Malicious Prosecution, Right to Counsel, and Conspiracy Claims**

Defendants' motion for summary judgment argues that they are entitled to judgement as a matter of law with respect to all of Plaintiff's causes of action and that therefore all of Plaintiff's claims must be dismissed. (Defs.' Br. at 2, 6-7.) Plaintiff's opposition only responds by arguing that he has established a claim for deliberate indifference due to a delay in medical treatment. (See generally Pl.'s Opp.) Plaintiff has therefore abandoned the claims for false arrest, malicious prosecution, violation of right to counsel, and conspiracy.

Since Plaintiff only responds to Defendants' motion for summary judgment by arguing that he has established a deliberate indifference claim for a delay in medical care, the Court finds that Plaintiff has abandoned all other claims. See Banyan v. Sikorski, No. 17-CV-4942, 2021 WL 2156226, at *2 (S.D.N.Y. 2021) (concluding that the plaintiff abandoned claims where the plaintiff "provided no argumentation in his brief in opposition explaining why [certain] claims . . . should not be dismissed") (citing Taylor v. Rodriguez, 238 F.3d 188, 196–97 (2d Cir. 2001)).

Even if Plaintiff had not abandoned these claims, the claims must be dismissed because Plaintiff has not alleged any facts to support municipal liability for these claims. "To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Deferio v. City of Syracuse, 770 F. App'x 587, 589 (2d Cir. 2019) (citing Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012)). Absent such a custom, policy, or usage, a municipality cannot be held liable based on a respondeat superior basis for the acts of its employees. Monell, 436 U.S. at 691. Beyond the facts of his own isolated incident, Plaintiff has not identified sufficient evidence suggesting the existence of any Nassau County municipal policy or custom with respect to these claims. See Jones, 691 F.3d at 81. Therefore, because there is no evidence from which a reasonable jury could find that these alleged violations of Plaintiff's rights were the result of a

policy, practice, or custom of the County, the County is entitled to summary judgement on these claims.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest, malicious prosecution, violation of right to counsel, and conspiracy claims.

**C.      The Deliberate Indifference Claim Fails**

Defendants argue that they are entitled to summary judgment on Plaintiff's deliberate indifference to medical needs claim because Officer Dias and EMT Goodwin immediately rendered aid to Plaintiff upon arriving at the scene and because the delay in transporting Plaintiff to the hospital does not constitute deliberate indifference. (See Defs.' Br. at 11-12.) Defendants assert that Plaintiff's deliberate indifference claim fails as a matter of law because "it does not satisfy the two-part test adopted by the Second Circuit." (Id. at 12.)

A pretrial detainee's claim for deliberate medical indifference is analyzed under the Fourteenth Amendment. See Bruno v. City of Schenectady, 727 F. App'x 717, 720 (2d Cir. 2018); accord Sims v. City of New York, 788 F. App'x 62, 63 (2d Cir. 2019).[2] To succeed under the Fourteenth Amendment standard, a plaintiff must satisfy: (1) "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process;" and (2) a subjective prong "showing that the defendants acted with at least deliberate indifference to the challenged conditions." Sims, 788 F. App'x at 63 (internal quotation marks and alterations omitted). "The [first prong] requires a condition of urgency, one that may produce death, degeneration, or extreme pain." Bruno, 727 F. Apex at 720 (internal quotation marks omitted). The second prong requires proof that the defendant either "acted intentionally to impose

---

[2] Plaintiff's opposition brief incorrectly cites to the Eighth Amendment in arguing that he has established a deliberate indifference claim, but it is clearly established that a pretrial detainee's deliberate indifference claims are evaluated under the Fourteenth Amendment. See Valdiviezo v. Boyer, 752 F. App'x 29, 32 (2d Cir. 2018); Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)). Furthermore, Plaintiff's claim for torture is duplicative of his Fourteenth Amendment deliberate indifference claim and therefore analyzed as part of this claim.

11

the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[ ] knew, or should have known, that the condition posed an excessive risk to health or safety." Id. (emphasis, internal quotation marks, and citation omitted).

When the basis for a plaintiff's claim is "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the [plaintiff's] underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003) (internal quotation marks omitted). "Stated differently, 'it's the particular risk of harm faced by the [plaintiff] due to the challenged deprivation of care, rather than the severity of the [plaintiff's] underlying medical condition, considered in the abstract, that is relevant for [Section 1983] purposes.'" Goris v. Breslin, 402 F. App'x 582, 585 (2d Cir. 2010) (quoting Smith, 316 F.3d at 186). In considering whether a delay caused a risk of harm, a court may consider "[t]he absence of adverse medical effects or demonstrable physical injury." Smith, 316 F.3d at 187. Although a delay in providing necessary medical care may in some cases constitute unconstitutional deliberate indifference, such a classification is reserved for when "officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." Sims, 788 F. App'x at 64 (quoting Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999).

### 1. Plaintiff Failed To Satisfy the Objective Prong

Plaintiff's deliberate indifference claim based on delayed treatment fails to demonstrate the existence of a genuine issue of fact as to the first prong regarding a serious risk of harm. Only one hour and fifty minutes elapsed between the ambulance arriving at the scene and Plaintiff being

12

transported to Nassau University Medical Center, and Plaintiff has failed to demonstrate that his injury was in any way exacerbated or at serious risk of exacerbating as a result of this delay. While the Court recognizes that Plaintiff suffered serious injuries with regards to his right tibial pilon fracture and right fibula fracture, Plaintiff's allegations do not show how Defendants' actions worsened his condition or resulted in any specific harm owing to the delay in his treatment. Although Plaintiff alleged that he remained in pain during the one hour and fifty-minute wait, he does not allege that the delay exacerbated his injuries. See Valdiviezo v. Boyer, 752 F. App'x 29, 32 (2d Cir. 2018) (affirming district court's dismissal of claim based on delay of medical care because "[a]lthough [Plaintiff] alleged that he remained in pain during the hour-long wait, he [did] not allege that the delay exacerbated his injuries.")

In Washington v. Artus, 708 F. App'x 705, 708 (2d Cir. 2017), the Second Circuit affirmed a district court's grant of summary judgment on a deliberate indifference claim where the plaintiff had argued that the defendants demonstrated deliberate indifference to his broken ankle by allowing four hours to pass before transporting him to the emergency room. Id. at 708-09. In Washington, the Second Circuit noted that the plaintiff "proffered no evidence, nor did he even allege, that any delay exacerbated his injury." Id. The Second Circuit also observed that "defendants carried [Plaintiff] on a stretcher to the infirmary soon after the incident, treated his broken ankle with a splint and ice, and arranged to have him transported to the emergency room after consulting with an outside doctor." Id. The Second Circuit went on to hold that "on this record, no reasonable jury could find that the approximately four hours that elapsed between his injury and his arrival at the emergency room was a sufficiently serious deprivation of medical care or that the defendants were deliberately indifferent to his needs during that period." Id.

Here, as in Washington, no reasonable jury could find that the one hour and fifty minutes that elapsed between Plaintiff's injury and his transportation to the emergency room was a

13

sufficiently serious deprivation of medical care. The record reflects that upon arriving at the scene, Officer Dias immediately requested EMS and began rendering aid to Plaintiff by speaking to him, evaluating his injuries, and checking for blood loss. (Defs.' 56.1 ¶ 14; Dias Dep. Tr. 62.) Officer Dias observed that Plaintiff was conscious, alert, and breathing at this time. (Dias Dep. Tr. 62.) Approximately six minutes after Nassau County police officers arrived at the scene, EMS arrived, and EMT Goodwin worked with officers to stabilize Plaintiff's injuries by helping him onto a stretcher and placing him in the ambulance. (Goodwin Dep. Tr. 37-40; Nassau Cty. Patient Care Report at 2.) EMT Goodwin took Plaintiff's vital signs and noted that Plaintiff was stable, breathing, talking, and able to hold a conversation with a normal demeanor. (Goodwin Dep. Tr. 40, 48-49.) EMT Goodwin attempted to give Plaintiff an IV with morphine for the pain, but the IV could not be successfully inserted. (Nassau Cty. Patient Care Report at 2; Goodwin Dep. Tr. 65, 84.) Once he arrived at the hospital, Plaintiff was given fentanyl for his pain and subsequently underwent multiple surgeries to treat and stabilize the fractures in his right leg. (Pl.'s Opp. at 11; Nassau Medical Record at 6, 430.)

Courts have consistently rejected deliberate indifference claims under circumstances involving relatively brief delays or interruptions in treatment and a dearth of evidence that the plaintiff's pain or medical condition worsened as a result. See, e.g., Davis v. Furey, No. 19-CV-1867, 2021 WL 2827366, at *6 (D. Conn. 2021) ("Davis has not presented any evidence that he experienced any serious risk of harm as a result of the asserted two-hour delay in receiving treatment . . ."); Liverpool v. Davis, 442 F. Supp. 3d 714, 737 (S.D.N.Y. 2020) (granting summary judgment where plaintiff waited three hours for medical treatment but did "not allege[ ] that the delay in treatment caused his condition to worsen"); Rodriguez v. Mercado, No. 00-CV-8588, 2002 WL 1997885, at *9 (S.D.N.Y. 2002) (dismissing deliberate indifference claim based on eight or nine-hour delay, and noting that patients "seeking care for a non-life-threatening injury generally

14

experience[ ] some delay in receiving treatment"). In addition, although there is some evidence that Plaintiff was in pain in the ambulance while awaiting transportation to the hospital, his stable vital signs and consistent ability to hold a conversation with a normal demeanor indicate that he was not in the type of "extreme pain" that might potentially be sufficient to satisfy objective prong of the analysis.[3] Compare Martinez v. City of New York, 564 F. Supp. 3d 88, 105 (E.D.N.Y. 2021) (finding objective prong satisfied on summary judgment in light of evidence that plaintiff was "screaming and crying" for hours and repeatedly told an officer that she was in too much pain to be fingerprinted), with Ridge v. Davis, 18-CV-8958, 2022 WL 357020, at *15 (S.D.N.Y. 2022) (granting summary judgment where plaintiff's "sporadic complaints as well as [his] ability to hold a conversation" indicated that he was not in the type of "extreme pain" to potentially satisfy the objective prong).

Moreover, although Plaintiff alleges that the Officers were punishing him and attempting to pressure him not to press charges against Mr. Miale during the time he was waiting in the ambulance, this conclusory assertion is not enough to survive summary judgment. According to Plaintiff, the officers repeatedly asked Plaintiff if he wanted to drop the charges against Mr. Miale when he was in the ambulance and informed him that he would be arrested if he did not drop the charges because Mr. Miale also wanted to press charges against him. (Pl. Dep. 26-27.) Plaintiff alleges that he repeatedly responded that he wanted to press charges and that the officers were keeping him on the scene in an attempt to dissuade him from pressing charges. (Id.) However, there is no evidence specifically connecting the alleged delay in Plaintiff's treatment to an improper motive, and Plaintiff's claim cannot survive solely on the basis of this conclusory allegation. Compare Ridge, 2022 WL 357020, at *15 (S.D.N.Y. 2022) (holding that "no rational

---

[3] As noted earlier, while there is evidence that Plaintiff was screaming when being placed in the ambulance, there is no further evidence indicating what, if any, complaints about pain Plaintiff made to officers and EMT Goodwin after Plaintiff was placed into the ambulance. Instead, EMT Goodwin observed that Plaintiff was stable, breathing, talking, and able to hold a conversation with a normal demeanor. (Goodwin Dep. Tr. 40, 48-49.)

15

jury could conclude" that defendant intended to delay the plaintiff's treatment solely because defendant allegedly told plaintiff he "shouldn't have made [defendant] run like that" after apprehending him), with Cumberbatch v. Port Auth. of New York & New Jersey, 2006 WL 3543670, at *2, *9 (S.D.N.Y. Dec. 5, 2006) (finding genuine issues of material fact as to officers' intent to delay treatment as punishment due to evidence that "continued requests for medical attention were met with" an officer's reply that "they wanted him to 'marinate'"). Based on this record, a reasonable jury could not find that the "officials deliberately delayed care as a form of punishment." Sims, 788 F. App'x at 64.[4]

Other than his assertion of suffering pain while he was in the ambulance, Plaintiff has adduced no evidence that his underlying conditions worsened due to the short delay between being place in the ambulance and arriving at the hospital. Although Plaintiff may have experienced pain resulting from his injury while he waited to go to the hospital, no evidence suggests that the delay exacerbated his pain or injury. As such, the brief delay in Plaintiff's medical treatment after his injury is insufficient to satisfy the objective prong of a Fourteenth Amendment deliberate indifference claim. See Washington, 708 F. App'x at 709 (holding that four-hour delay in treating plaintiff's broken ankle did not constitute sufficiently serious deprivation of medical treatment); Valdiviezo, 752 F. App'x at 32 (holding that one-hour delay in treating plaintiff who complained of "excruciating pain" after a fall did not constitute sufficiently serious deprivation of medical treatment); see also Martin v. City of N.Y., No. 11-CV-4507, 2016 WL 11431027, at *5 (E.D.N.Y.

---

[4] Furthermore, in order to allege municipal liability as part of Plaintiff's Monell claim for deliberate indifference, Plaintiff must demonstrate that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Deferio, 770 F. App'x at 589. Plaintiff's only argument in support of municipal liability for this claim is that the police officers delayed transporting him to the hospital while acting pursuant to Nassau County Police Department policy, which allegedly requires two officers to accompany an arrestee who is being transported to the hospital. (Pl.'s Opp. at 13-14.) Plaintiff, however, has not pointed to any municipal policy or custom involving Nassau County police officers delaying treatment in order to discourage citizens from pressing charges (or even more generally, delaying treatment in order to punish citizens). Therefore, even if there was a disputed factual issue as to whether the individual officers intentionally delayed Plaintiff's treatment as a form of punishment, Plaintiff could still not prevail because he does not have a viable Monell claim based on this theory.

2016) (granting summary judgment where record failed to suggest that "modest delays [of less than two hours] in treatment in any way exacerbated plaintiff's injury or caused him any harm except for the discomfort and . . . pain he experienced while waiting to receive treatment").

As such, the Court finds that a reasonable trier of fact could only determine that the delay in Plaintiff's treatment did not amount to a substantial risk of serious harm.

### 2. Plaintiff Failed to Satisfy the Subjective Prong

Additionally, the record is inadequate to support a finding that the officers or the EMT acted with deliberate indifference to satisfy the second prong. "A plaintiff can prove deliberate indifference by showing that the [municipal actor] recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [municipal actor] knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety." Charles v. Orange County, 925 F.3d 73, 87 (2d Cir. 2019) (alteration in original) (emphasis and quotation omitted).

There is nothing in the record here to suggest that the police officers or EMT Goodwin "recklessly failed to act with reasonable care" to mitigate the risk that Plaintiff's injuries posed to him. Instead, as noted supra, Officer Dias immediately rendered aid to Plaintiff and called EMS upon arriving at the scene. (Defs.' 56.1 ¶ 13; Dias Dep. Tr. 55.) The officers and EMT Goodwin then helped Plaintiff onto a stretcher and placed him in the ambulance, stabilizing his injured leg. (Goodwin Dep. Tr. 38-40.) EMT Goodwin treated Plaintiff by taking his vital signs and noted that throughout the entire time they were together, Plaintiff remained conscious and alert with stable vital signs. (Goodwin Dep. Tr. 40, 48-49, 62.) EMT Goodwin also attempted to administer morphine to Plaintiff on the scene. The record is devoid of evidence to suggest that the officers and EMT Goodwin knew or should have known that the one hour and fifty-minute delay in transporting Plaintiff to Nassau University Medical Center would result in a serious risk of harm

17

to plaintiff. While they were made aware that Plaintiff had suffered an injury to his leg that caused him pain, the record reflects that Plaintiff remained stable, conscious, and alert throughout the time period that the officers and EMT Goodwin were with him. (Defs.' 56.1 ¶ 16; (Goodwin Dep. Tr. 40, 48-49, 62.); see Stewart v. City of New York, No. 15-CV-4335, 2018 WL 1633819, at *9 (S.D.N.Y. 2018) (dismissing deliberate indifference claim where defendants "took various steps to alleviate [plaintiff's] pain and discomfort.").

Accordingly, Defendants' motion for summary judgment regarding Plaintiff's deliberate indifference claim is granted in its entirety.

### 3. Municipal Liability

Plaintiff cannot establish municipal liability under Monell because Plaintiff has failed to show that the municipal actors committed any underlying constitutional violations. Where, as here, a plaintiff brings a Section 1983 claim against a municipality, the plaintiff's failure to show that the municipal actors committed the underlying constitutional tort "preclude[s] a judgment against the municipality." Askins v. Doe, 727 F.3d 248, 253 (2d Cir. 2013). As explained above, a reasonable jury could not find for Plaintiff on his deliberate indifference to medical needs claim. (See supra Section III. C.) Accordingly, Plaintiff's claim for municipal liability based on this violation must be dismissed. See Goe v. Zucker, 43 F.4th 19, 34 (2d Cir. 2022) (affirming dismissal of Monell claim for lack of an underlying constitutional violation by the individual municipal actors).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED and this action is DISMISSED.

**SO ORDERED.**

Dated:   January 30, 2025
         Central Islip, New York

                                          /s/ (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE